# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH CORNELL; BETH CORNELL,<br><br>                              Plaintiffs,<br><br>   vs.<br><br>FEDERAL INSURANCE COMPANY; DOES 1 through 100, inclusive,<br><br>                             Defendants. | CASE NO. 11-CV-1800 JLS (BLM)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO STRIKE AND DISMISS COMPLAINT**<br><br>(ECF No. 4) |

     Presently before the Court is Defendants' motion to strike portions of Plaintiffs' Complaint (ECF No. 4-3) and to dismiss the Complaint for failure to state a claim (MTD, ECF No. 4-1). Plaintiffs filed a statement of non-opposition (ECF No. 6) to Defendants' motion to strike the following sentence from Paragraph 26 of the Complaint: "Despite its obligation to respond to an insured's inquiries in a prompt manner, CHUBB has unreasonably refused to respond at all to this most recent request for a defense." Accordingly, the Court **STRIKES** that sentence from Plaintiffs' Complaint. Plaintiffs also filed an opposition to Defendant's motion to dismiss (Opp'n to MTD, ECF No. 5), and Defendant replied (Reply ISO MTD, ECF No. 7). The Court took these matters under submission without oral argument pursuant to Local Rule 7.1. For the reasons stated below, Defendant's motion to dismiss is **GRANTED**.

# BACKGROUND[1]

Plaintiffs, husband and wife Kenneth and Beth Cornell ("Plaintiffs"), are California citizens and real estate developers. Defendant Federal Insurance Company ("FIC") is a New Jersey corporation and member of the Chubb Group of Insurance Companies. In brief, the instant dispute has arisen because Plaintiffs were sued twice in state court, and they sought defense and indemnification under their insurance policy with Defendant for those lawsuits. Defendant rejected their request as outside Plaintiffs' personal liability coverage. In the case presently before this Court, Plaintiffs state six causes of action against Defendant arising out of this rejection. The first four are breach of contract claims for failure to defend, failure to indemnify, and "bad faith" breach of the implied covenant of good faith and fair dealing in failing to defend and indemnify. The fifth cause of action is for contract reformation, and the sixth requests declaratory relief.

There are two insurance policies relevant to the instant dispute. The Primary Policy is CHUBB Masterpiece policy number 12755469-01, effective July 7, 2006 through July 7, 2007, and the Excess Policy is policy number 12755469-04, effective January 25, 2007 through January 25, 2008. (Compl. Exs. C, D.) In general, these policies provide Plaintiffs homeowners and personal liability insurance. The Primary Policy provides Plaintiffs $1,000,000 of personal liability coverage, and the Excess Policy provides another $1,000,000 for covered damages in excess of all underlying insurance covering those damages.[2] (*See* Compl. Ex. D.) Plaintiffs claim they were induced to purchase the Policy by Defendant's advertising that they included coverage for "Personal Injury (libel & slander)" and "Incidental Business at Home." (*See* Compl. Ex. E.) "Plaintiffs anticipated conducting incidental business at their home, such as the exploration of a new business venture not arising out of any of their established businesses." (Compl. ¶ 17.)

On November 24, 2009, Kristine N. Tran filed a lawsuit ("Tran lawsuit") against Plaintiffs in San Diego Superior Court, *Kristine N. Tran v. William S. McCulley, et al.*, Case No. 37-2009-

---

[1] Unless otherwise noted, all facts in this section are taken from Plaintiffs' Complaint. (Compl., ECF No. 1.)

[2] Neither party has argued that the terms of the Excess Policy differ materially from those of the Primary Policy for the purposes of this dispute. Accordingly, the Court will not restate the terms of the Excess Policy. For simplicity, the Court will refer to these terms collectively as "the Policy."

1  00087241-CU-CO-CTL.  (Compl. Ex. A.)  On September 1, 2010, Susannah Smith filed a second
2  lawsuit ("Smith lawsuit") against Plaintiffs, also in San Diego Superior Court, *Susannah Smith v.*
3  *Ken Cornell, et al.*, Case No. 37-2010-00099335-CU-CL-CTL.  (Compl. Ex. B.)  Both lawsuits
4  contain allegations arising out of several failed or fraudulent real estate development investments
5  in and around San Diego between 2006 and 2007, including claims alleging breaches of contract,
6  the implied covenant of good faith, fiduciary duty, California securities laws, civil conspiracy,
7  fraud, negligence, and accounting.

8  Plaintiffs tendered these actions to Defendant on February 23, 2011, on the grounds that
9  they "contain sufficient allegations, including causes of action for negligence arising from an
10  incidental business pursuit, which raise a potentiality of coverage and trigger the duty to defend."
11  Defendant requested more information, which Plaintiffs provided, and subsequently denied
12  Plaintiffs' request for coverage on March 4, 2011.  Plaintiffs now claim Defendant failed to
13  "analyze[ ] the correct policies and facts both alleged and available by extrinsic evidence," leading
14  Defendant to improperly eschew its duty to defend in these lawsuits.  Apparently, Defendant
15  "unreasonably ignored" the "incidental business away from home" and "incidental business at
16  home" exceptions to the Policies' general exclusion of business pursuits from covered liabilities.

**LEGAL STANDARD**

18  Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that
19  the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a
20  motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and
21  sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain
22  statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not
23  require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-
24  defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
25  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a plaintiff's
26  obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and
27  conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*,
28  550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a complaint

suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 679 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* Moreover, "for a complaint to be dismissed because the allegations give rise to an affirmative defense[,] the defense clearly must appear on the face of the pleading." *McCalden v. Ca. Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990) (internal quotations omitted).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See Desoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

**DISCUSSION**

At the core of this dispute is whether the Policy triggers Defendant's duty to defend Plaintiffs in the underlying lawsuits. For the reasons discussed below, the Court finds it does not. Plaintiffs have not alleged the type of damages covered by the Policy. Instead, the underlying lawsuits are specifically excluded from the Policies.

**1. Duty to Defend**

An insurer must defend any action that seeks damages potentially covered by the insurance policy, either as alleged in the third party complaint or known to the insurer at the time of the insured's tender of defense. *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 (1996). Conversely, the insurer owes no duty to defend when the third party action "can by no conceivable theory" raise a single issue that could bring it within the policy coverage. *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993).

"While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *N. Am. Bldg. Maint., Inc. v. Fireman's Fund Ins. Co.*, 40 Cal. Rptr. 3d 468, 479 (Cal. Ct. App. 2006). A court must interpret a contract "to give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636. For written contracts, "the intention of the parties is to be ascertained from the writing alone, if possible." *Id.* § 1639; *see also Haynes v. Farmers Ins. Exch.*, 89 P.3d 381, 385 (Cal. 2004) (applying § 1639 to an insurance contract). The contract language, therefore, determines its interpretation "if the language is clear and explicit." Cal. Civ. Code § 1638; *see also Bank of the W. v. Superior Court*, 833 P.2d 545, 551 (Cal. 1992); *Blackhawk Corp. v. Gotham Ins. Co.*, 63 Cal. Rptr. 2d 413, 418 (Cal. Ct. App. 1997) ("[W]here the language of a contract is clear, we ascertain intent from the plain meaning of its terms and go no further."). The contract's words "are to be understood in their ordinary and popular sense . . . unless used by the parties in a technical sense, or unless a special meaning is given to them by usage." Cal. Civ. Code § 1644; *see also MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1213 (Cal. 2003).

A policy provision in an insurance contract is truly ambiguous if the provision is capable of two or more reasonable constructions. *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 627 (Cal. 1995); *ACS Sys., Inc. v. St. Paul Fire & Marine Ins. Co.*, 53 Cal. Rptr. 2d 786, 793 (Cal. Ct. App. 2007). To interpret an ambiguous policy provision, the Court must "give effect to the insured's objectively reasonable expectations." *Kavruck v. Blue Cross of Cal.*, 134 Cal. Rptr. 2d 152, 157 (Cal. Ct. App. 2003). To determine whether coverage is warranted, "courts must focus on the nature of the risk and the injury, in light of the policy provisions." *Vandenberg v. Superior Court*,

1  982 P.2d 229, 245 (Cal. 1999); *see also Cont'l Cas. Co. v. Superior Court*, 111 Cal. Rptr. 2d 849,
2  862 (Cal. Ct. App. 2001).

3       In addition to these general policy interpretation principles, "[p]articular rules apply to the
4  interpretation of insurance policy exclusions." *N. Am. Bldg. Maint.*, 40 Cal. Rptr. 3d at 479.
5  "[A]n exclusion limits or takes back some of the insurance coverage granted by the insuring
6  clause." *Essex Ins. Co. v. City of Bakersfield*, 65 Cal. Rptr. 3d 1, 10 (Cal. Ct. App. 2007).
7  "Therefore, 'exclusions serve to limit coverage granted by an insuring clause and thus apply only
8  to hazards *covered* by the insuring clause.'" *Id.* (quoting *Old Republic Ins. Co. v. Superior Court.*,
9  77 Cal. Rptr. 2d 642, 652 (Cal. Ct. App. 1998)). "[E]xclusionary clauses are strictly construed
10 against the insurer and in favor of the insured." *N. Am. Building Maint.*, 40 Cal. Rptr. 3d at
11 479 (citation omitted). Accordingly, "although the insured has the burden of proving the contract
12 of insurance and its terms, the insurer bears the burden of bringing itself within a policy's
13 exclusionary clauses." *Id.* (citation omitted).

14      Accordingly, in deciding an insurance coverage dispute, "[t]he determination whether the
15 insurer owes a duty to defend usually is made in the first instance by comparing the allegations of
16 the complaint with the terms of the policy." *Montrose Chem. Corp. v. Superior Court*, 861 P.2d
17 1153, 1157 (Cal. 1993) (quoting *Horace Mann Ins. Co. v. Barbara B.*, 846 P.2d 792, 795 (Cal.
18 1993)). "[T]he insured need only show that the underlying claim *may* fall within policy coverage;
19 the insurer must prove it *cannot*." *Id.* at 1161. "An insurer may rely on an exclusion to deny
20 coverage only if it provides *conclusive evidence* demonstrating that the exclusion applies." *Atl.*
21 *Mut. Ins. Co. v. J. Lamb, Inc.*, 123 Cal. Rptr. 2d 256, 272 (2002).

22 **2. Underlying Actions**

23      In the Tran lawsuit, Kristine N. Tran sued Plaintiffs, along with several other individuals
24 and entities, alleging that each of the defendants named in that action "acted in concert to defraud
25 her and breach obligations owed to her in connection with a real estate development venture
26 involving property located at 7231 Romero Drive in La Jolla, California ('the Romero Property')."
27 (MTD 5.) As alleged in the third amended complaint in the Tran lawsuit, in September, 2004, Ms.
28 Tran executed a promissory note with Mr. McCulley, one of Plaintiffs' partners, in the amount of

$300,000. (Tran Third Amended Complaint ("TAC") ¶ 24.) Ms. Tran executed the note in exchange for a percentage of Mr. McCulley's profits from his membership interest in one of Plaintiffs' limited liability companies, Ocean Pacific II, LLC ("OPII"), which was memorialized in a written agreement. (*Id.*) Ms. Tran was informed that OPII was developing the Romero Property and that the money she invested would be used for that development. (*Id.* at ¶ 26.) However, Ms. Tran was never repaid the principal on the promissory note nor any return on the investment, which was to be no less than $450,000. (*Id.* at ¶¶ 24, 27.) Instead, in May, 2006, Mr. McCulley informed Ms. Tran he had no money and could not re-pay her. (*Id.* at ¶ 37.)

Apparently, when Ms. Tran approached Plaintiff Kenneth Cornell about her unpaid note, he told her "that he did not have to help her get the money back" but that "she was a nice person so he would help her," and persuaded her to accept a 20% membership interest in OPII in lieu of satisfaction of the note. (Tran TAC ¶¶ 40-44.) The Tran lawsuit alleged that Plaintiffs and their partners materially misrepresented the actual value of the 20% membership interest in OPII, which Ms. Tran claims was actually worthless. (*Id.* at ¶¶ 39-49.) For example, Plaintiffs did not disclose that there had been illegal grading of the Romero Property. (*Id.* at ¶¶ 50-51.) Further, OPII sold the Romero Property, its only valuable asset, in a short sale in May, 2009, without her knowledge or consent. (*Id.* at ¶ 52-55.) Ms. Tran claimed that as a result of these actions by Plaintiffs, she lost the entire value of her investment. She requested recovery of her economic loss, an accounting, interest, attorney's fees and costs, and punitive and exemplary damages. (*Id.* at 41.)

Along the same lines, the Smith lawsuit alleged breaches of contract and fraud in connection with various of Plaintiffs' real estate ventures. In that action, Susannah Smith a/k/a Sukey Smith sued Plaintiffs, along with Mr. McCulley and several business entities owned by those three individuals, including OPII and Ocean Pacific VI, LLC ("OPVI"), Ocean Pacific VII, LLC ("OPVII"), Ocean Pacific XI, LLC ("OPXI"), Ocean Pacific Rockaway, LLC ("OPR"), and Ocean Pacific Townhouse, LLC ("OPT"). (Smith Compl. 1.) Ms. Smith alleged that Plaintiffs formed and managed approximately fifty such entities. (*Id.* at ¶ 3.) Apparently, Ms. Smith became involved in several these, listed above, and she claimed that Plaintiffs breached their contractual obligations and other legal duties owed to her in connection with a series of related

real estate investment projects in San Diego County.  (*See* MTD 7-8.)  One of the allegations in the Smith lawsuit is almost identical to that in the Tran lawsuit, in that Ms. Smith apparently loaned Plaintiffs money for development of the Romero Property and was later induced to accept an ownership interest in OPII in lieu of payment under the promissory note, and subsequently was not informed or asked to consent to the short sale of the Romero Property  (Smith Compl. ¶¶ 21-41.)  And the Smith lawsuit also alleged similar wrongdoing by Plaintiffs in connection with at least five other property developments.  In addition to breach of contractual and legal duties, the Smith lawsuit claims violations of RICO and California securities laws, civil conspiracy, and negligence.  Like Ms. Tran, Ms. Smith sought recovery of her economic loss, an accounting, and attorney's fees and costs.  (*Id.* at 38-40.)

**3.  Plaintiffs' Insurance Policy**

In pertinent part, the terms of the Policy provide as follows:

> This part of your Masterpiece Policy provides you with personal liability coverage for which you or a family member may be legally responsible anywhere in the world unless stated otherwise or an exclusion applies. . . .
>
> We cover damages a covered person is legally obligated to pay for personal injury or property damage which take place anytime during the policy period and are caused by an occurrence, unless stated otherwise or an exclusion applies.  Exclusions to this coverage are described in **Exclusions**. . . .
>
> **Defense Coverages**
> We will defend a covered person against any claim or suit seeking covered damages for personal injury or property damage . . . .
>
> **Damaged Property**
> We cover the replacement cost of other people's property, up to $1,000 for each occurrence, if the property was damaged or destroyed by a covered person. . . .
>
> **Exclusions** . . .
>
> **Business Pursuits**.  We do not cover any damages arising out of a covered persons' business pursuits, investment or other for-profit-activities, any of which are conducted on behalf of a covered person or others, or business property.
>
> But we do cover damages arising out of . . . an incidental business away from home, incidental business at home . . . unless another exclusion applies. . . .
>
> "Incidental business away from home" is a self-employed sales activity . . . [which] must:

|   |   |
|---|---|
| 1 | • not yield gross revenues in excess of $15,000 in any year; |
| 2 | • have no employees subject to any workers' compensation, disability benefits, unemployment compensation or other similar laws; and |
|   | • conform to local, state, and federal laws. |

"Incidental business at home" is a business activity, other than farming, conducted in whole or in part on your residence premises which must:
• not yield gross revenues in excess of $15,000 in any year, except for the business activity of managing one's own personal investments, regardless of where the revenues are produced;
• have no employees subject to any workers' compensation, disability benefits, unemployment compensation or other similar laws; and
• conform to local, state, and federal laws. . . .

We do not cover damages or consequences resulting from business or professional care or services performed or not performed. . . .

**Contractual liability**. . . . We also do not cover any damages arising from contracts or agreements made in connection with any covered person's business. Nor do we cover any liability for unwritten contracts, or contracts in which the liability of others is assumed after a covered loss.

(*See* Compl. Ex. C.) In sum, as relevant here, the Policy provides liability coverage for personal injury and property damage, excluding any damage arising out of a covered persons' business pursuits so long as those business pursuits are not merely incidental business away from home or at home. Thus, the task presently before the Court is to determine whether the underlying actions against Plaintiffs seek covered damages for personal injury or property damage and are not excluded from coverage as arising out of business pursuits or from contracts in connection with Plaintiffs' business.

**4. Application of the Underlying Lawsuits to the Policy Terms**

Although the parties hotly dispute whether the underlying lawsuits may properly be interpreted as alleging "property damage" covered by the Policy, the Court need not address all of these arguments because it finds that, regardless, the Policy clearly excludes lawsuits of this type. In other words, even if Plaintiffs had met their burden of proving the underlying actions *could* be construed as alleging covered property damage—an argument which is tenuous at best—the business pursuits and contractual liability exclusions specifically bar the claims alleged in the underlying actions. Accordingly, the Court agrees with Defendant that it has met its burden of proving the underlying actions *cannot* fall within the scope of the Policy's coverage. Consequently, Defendant's duty to defend was not triggered, and the facts as alleged cannot

1  support Plaintiffs' breach of contract and bad faith claims. *See Upper Deck Co. v. Fed. Ins. Co.*,
2  358 F.3d 608, 615 (9th Cir. 2004) (affirming district court's granting insurer's motion for
3  summary judgment in action arising from insurer's refusal to defend seller in RICO lawsuit
4  because "[t]he plaintiffs in the underlying suit do not allege the type of damages covered by the
5  policy" and thus insurer had no duty to defend); *Hurley Constr. Co. v. State Farm Fire & Cas.*
6  *Co.*, 10 Cal.App.4th 533 (1992) (affirming summary judgment to insurer because third party action
7  alleged no facts indicating a potential for coverage). The Court examines the contractual liability
8  and business pursuits exclusions in turn.

9  First, the Court agrees with Defendant that the "clear and explicit" meaning of the
10 contractual liability exclusion bars Plaintiffs' recovery under the Policy for any damages related to
11 contracts Plaintiffs made in connection with their business. (*See* MTD 14.) Each of the causes of
12 action in both the Tran and Smith lawsuits arises out of an underlying breach of a business
13 agreement with Plaintiffs. As Defendant argues, "[i]t is plain from the face of both the Tran and
14 Smith Complaints that the claims for economic loss asserted against the Cornells (and their
15 affiliated limited liability corporations) arise directly out of alleged business agreements or
16 contracts such parties made with Ms. Tran and Ms. Smith in connection with commercial real
17 estate development ventures." (Reply ISO MTD 5.) In their opposition to Defendant's motion,
18 Plaintiffs entirely fail to address the application of the contractual liability exclusion to the
19 underlying actions. The Court finds this exclusion alone would suffice to bar Plaintiffs' claims.

20 However, in addition, the business pursuits exclusion expressly bars coverage for damages
21 rising out of a covered persons' business, which is precisely the type of damages the underlying
22 actions seek. California has adopted the definition of business pursuit also used in many other
23 jurisdictions, of which the "central theme . . . is regular activity with the motivation for profit or
24 gain." *State Farm Fire & Casualty Co. v. Drasin*, 152 Cal. App. 3d 864 (1984) (citing 7A
25 Appleman, Ins. Law & Practice (1979) § 4501.10). Plaintiffs have not alleged that they were not
26 motivated by profit in forming a multitude of Ocean Pacific limited liability companies for the
27 purpose of property development. Instead, they focus their energies on obfuscating the issue by
28 emphasizing irrelevant "expansion" of coverage, arguing these companies were part of their

"incidental business at home," or trying to reframe the underlying complaints as alleging property damage.  (*See* Opp'n to MTD 7-8, 12-14.)  These attempts are unavailing.  "[C]laims do not exist in the ether, they consist of pleaded allegations coupled with extrinsic facts.  That is what defines the insurer's coverage duties, not the language chosen by the pleader."  *Uhrich v. State Farm Fire & Cas. Co.*, 109 Cal. App. 4th 598, 611 (2003).  Nor do Plaintiffs argue that the business pursuits exclusion contained in the Policy is unclear or should not be enforced according to the plain meaning of its terms.  Indeed, such business pursuits exclusions are "standard in homeowners policies and [have] consistently been upheld as clear and unambiguous by the California courts."  *State Farm Fire & Cas. Co. v. Geary*, 699 F. Supp. 756, 759 (N.D. Cal. 1987) (citing cases).  For these reasons, the Court must conclude that the underlying actions properly fall within the business pursuits exclusion of the Policy.

It is just as clear that the "incidental business" limitations of this exclusion do not apply.  As Defendant points out, Plaintiffs' actions as alleged in the underlying actions plainly do not fall within the "incidental business away from home" exception because they are not self-employed sales activities.  (*See* Reply ISO MTD 6.)  Nor are they "incidental business at home."  First, Plaintiffs do not state the amount of gross revenues earned through these various business entities per year, but there is no indication that they are less than $15,000.  Further, Plaintiffs own documents indicate that employees were likely hired to conduct various development actions, including the same illegal grading and cactus removal Plaintiffs point out.  (*See* Fanning Decl. Ex. 1 ISO Opp'n to MTD.)  Perhaps most importantly, there is no indication these business pursuits were conducted "in whole or in part on [Plaintiffs'] residence."  In fact, just the opposite is suggested by the facts.  Indeed, the point is not whether the regular profit-seeking activity was "the exploration of a new business venture" or arose "out of any of [Plaintiffs'] established business," as Plaintiffs seem to argue.  (*See* Compl. ¶ 17.)  Instead, "[t]he typical business pursuits exclusion turns on a profit motive."  *Uhrich*, 109 Cal. App. 4th at 618.  Thus, whether Plaintiffs had fifty single-property companies or one fifty-property company cannot convert their business pursuits into "incidental business."  Consequently, the business pursuits exclusion contained in the Policy unambiguously applies to the actions alleged in the underlying actions.

Because the Policy, which provides homeowner's insurance and personal liability insurance, does not cover the type of business-related damages sought in the underlying actions, there was no potential for coverage under the Policy. In spite of Plaintiffs' attempts to parse the underlying actions and the Policy in various ways, they cannot escape the fact that the damages alleged in the underlying action arise out of their profit-seeking property development activities and relate to business agreements they made with the plaintiffs in those underlying actions. "[W]hile the duty to defend is broad, it is not unlimited. It is entirely dependent upon a showing by the insured that the third party claim for which it seeks a defense is one for damages which *potentially* fall within the policy coverage. It is the nature and kind of risk covered by the policy which both defines and limits the duty to defend." *Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819, 828 (2006) (citing cases). Here, the claims for which Plaintiffs seek defense simply do not fall within the personal liability coverage bargain originally struck by the parties.

For these reasons, the Court finds that, as a matter of law, Defendant could not have breached its duty to defend or indemnify. "Where there is no potential liability, there is no duty to defend." *Geary*, 699 F. Supp. at 762 (citing *Fire Ins. Exch. v. Jiminez*, 184 Cal. App. 3d 437, 442 (1986)). And if there is no potential for coverage and hence no duty to defend, there can be no cognizable bad faith claim. *Waller v. Truck Ins. Exchange Inc.*, 11 Cal. 4th 1, 37 (1995) ("Because [insurer] was under no obligation to defend or indemnify the [underlying] action, it did not breach the implied covenant of good faith and fair dealing.")

**5. Reformation**

Plaintiffs have also failed to presented any reason for the reformation of the Policy. Plaintiffs have not argued that the relevant terms of the Policy are not conspicuous, plain, and clear. In similar situations, other courts have refused to expand homeowners or personal liability insurance beyond the plain meaning of the insurance policy and beyond what was contemplated by the contracting parties. *See, e.g.*, *Geary*, 699 F. Supp. at 761 ("[B]usiness liability insurance, perhaps sold at a price corresponding to a greater risk, will not be construed to be part of the coverage contracted for in the personal liability umbrella policy.")

//

Nor do Plaintiffs' bare and unsupported allegations that they purchased the Policy because Defendant represented in advertisements that the Policy included "Liability Coverages for 'Personal Injury (libel & slander)' and 'Incidental Business at Home'" impact the Court's calculus. (*See* Compl. ¶ 17.) First, the advertisements reproduced by Plaintiffs appear at first glance to accurately reflect the terms of the Policy, if not Plaintiffs' desired interpretation of those terms. Second, these allegations do not provide any legal basis for the Court to order reformation of the Policy. They certainly do not allege any specific mistake or fraud by Defendant leading to an inaccurate reduction of their agreement to writing. *See Getty v. Getty*, 187 Cal. App. 3d 1159, 1179 (1986) ("The purpose of reformation is to effectuate the common intention of both parties which was incorrectly reduced to writing.") As in *State Farm Fire*, *supra*, Plaintiffs have

> simply fail[ed] to allege conduct rising to the level of misrepresentation which would lead [Plaintiffs] to believe that [they were] covered for business-related risks. [Plaintiff] has not alleged that she informed [Defendant] of [their] business activities and tried to obtain coverage for associated risks. In the absence of such allegations it is unreasonable to suggest that the umbrella [or "Masterpiece"] policy "covers everything."

*Id.* Having failed to present any legally cognizable basis to alter the plain terms of the Policy, Plaintiffs' claim for reformation is also properly dismissed.

## CONCLUSION

For the foregoing reasons, none of the claims asserted against Plaintiffs in the underlying actions are covered by the Policy. Thus, the Court finds that Plaintiffs have not stated a cognizable claim for the breach of the duty to defend or indemnify, and their other related claims similarly fail. Accordingly, Defendant's motion to dismiss is **GRANTED** and Plaintiffs Complaint is **DISMISSED** without prejudice. If Plaintiffs wish, they may file an amended complaint addressing all of the deficiencies outlined above <u>within 30 days of the date that this Order is electronically docketed</u>.

**IT IS SO ORDERED**.

DATED: May 30, 2012

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge